# EXHIBIT A

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK

|  |  |
|---|---|
| ANALIZ FERNANDEZ,<br><br>              Plaintiff(s),<br><br>  -against-<br><br>ST. MORITZ SECURITY SERVICES, INC.;<br>SAMUEL VALDEZ, individually and as owner,<br>officer, director, manager, employee, representative<br>and/or agent of ST. MORITZ SECURITY<br>SERVICES, INC.; and<br>CASSANDRA TABLER, individually and as owner,<br>officer, director, manager, employee, representative<br>and/or agent of ST. MORITZ SECURITY<br>SERVICES, INC.,<br><br>              Defendant(s). | **SUMMONS**<br><br>Index No.<br><br>Plaintiff designates<br>NEW YORK County as the<br>place of trial based on the location of<br>Defendant's principal place of<br>business.<br><br>Defendant's Business Address:<br>St. Moritz Security Services, Inc.<br>1177 6ᵗʰ Avenue, Suite 5127<br>New York, NY 10037 |

To the above-named Defendants:

     **YOU ARE HEREBY SUMMONED** to answer the Complaint of Plaintiffs in this action and to serve a copy of your Answer, or, if the Complaint is not served with this Summons, to serve notice of appearance, on the Plaintiff's attorneys within twenty (20) days after service of this Summons, exclusive of the day of service (or within thirty (30) days after the service is complete if this Summons is not personally delivered to you within the State of New York); and in case of your failure to appear or answer, judgment will be taken against you by default for the relief demanded in the Complaint.

## JURY TRIAL DEMANDED

DATED:    New York, New York
            February 5, 2021

Yours, etc.,
**LAW OFFICE OF**
**THOMAS S. MIRIGLIANO, ESQ., P.C.**

By: _____
       Thomas S. Mirigliano, Esq.
       115 Broadway – Fifth Floor.
       New York, New York 10006
       (917) 426-2688
       tsm@miriglianolaw.com
       *Attorneys for Plaintiff*

This is a copy of a pleading filed electronically pursuant to New York State court rules (22 NYCRR §202.5-b(d)(3)(i)) which, at the time of its printout from the court system's electronic website, had not yet been reviewed and approved by the County Clerk. Because court rules (22 NYCRR §202.5[d]) authorize the County Clerk to reject filings for various reasons, readers should be aware that documents bearing this legend may not have been accepted for filing by the County Clerk.

Defendants' Addresses:

**ST. MORITZ SECURITY SERVICES, INC.**
1177 6th Avenue, Suite 5127
New York, New York 10037

**SAMUEL VALDEZ**
117 6th Avenue, Suite 5127
New York, New York 10037

**CASSANDRA TABLER**
117 6th Avenue, Suite 5127
New York, New York 10037

This is a copy of a pleading filed electronically pursuant to New York State court rules (22 NYCRR §202.5-b(d)(3)(i)) which, at the time of its printout from the court system's electronic website, had not yet been reviewed and approved by the County Clerk. Because court rules (22 NYCRR §202.5[d]) authorize the County Clerk to reject filings for various reasons, readers should be aware that documents bearing this legend may not have been accepted for filing by the County Clerk.

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK

---

ANALIZ FERNANDEZ,

Plaintiff(s),

-against-

ST. MORITZ SECURITY SERVICES, INC.;
SAMUEL VALDEZ, individually and as owner,
officer, director, manager, employee, representative
and/or agent of ST. MORITZ SECURITY
SERVICES, INC.; and
CASSANDRA TABLER, individually and as owner,
officer, director, manager, employee, representative
and/or agent of ST. MORITZ SECURITY
SERVICES, INC.,

Defendant(s).

---

Index No.

**VERIFIED COMPLAINT**

Plaintiff, ANALIZ FERNANDEZ ("Plaintiff"), by and through her attorneys, Law Office of Thomas S. Mirigliano, Esq., P.C., as and for her Complaint in this action against Defendants ST. MORITZ SECURITY SERVICES, INC. ("St. Moritz"), SAMUEL VALDEZ ("Valdez"), and CASSANDRA TABLER ("Tabler") (collectively, "Defendants"), hereby alleges as follows:

## NATURE OF THE ACTION

1.     This is an action to redress the Defendants' unlawful employment practices, including sexual harassment, gender discrimination and retaliation, under the New York Human Rights Law, New York Executive Law §§ 290 *et seq.* (the "NYSHRL") and the New York City Human Rights Law, New York City Administrative Code §§ 8-101 *et seq.* (the "NYCHRL"), for which Plaintiff seeks compensatory damages, punitive damages, the costs of this action, and reasonable attorneys' fees.

This is a copy of a pleading filed electronically pursuant to New York State court rules (22 NYCRR §202.5-b(d)(3)(i)) which, at the time of its printout from the court system's electronic website, had not yet been reviewed and approved by the County Clerk. Because court rules (22 NYCRR §202.5[d]) authorize the County Clerk to reject filings for various reasons, readers should be aware that documents bearing this legend may not have been accepted for filing by the County Clerk.

3

2.      The factual basis for Plaintiff's claims, recounted in detail herein, includes a long history of discriminatory and retaliatory acts, as well as a sexually hostile and abusive work environment endured by Plaintiff, during which her immediate supervisor, Defendant Valdez, repeatedly bullied, demeaned, objectified, molested, propositioned, and harassed her.

3.      When Plaintiff complained about the severe and pervasive conditions to which she was subjected, the Defendants herein, including Valdez, retaliated against her and/or otherwise permitted the unlawful sexual harassment to continue unchecked.

## PARTIES

4.      Plaintiff Analiz Fernandez, at all times relevant herein, is and was a female individual residing in the State of New Jersey, and is and was an "employee" of Defendant St. Moritz entitled to protection under the NYSHRL and the NYCHRL.

5.      Defendant St. Moritz, at all times relevant herein, is and was a Pennsylvania corporation authorized to do business in the State of New York. At all relevant times herein, St. Moritz maintained a principal place of business at 1167 6th Avenue, 5th Floor, New York, New York 10036, and regularly transacts business in New York. St. Moritz is and was an "employer" within the meaning of the NYSHRL and the NYCHRL.

6.      Defendant Valdez, at all times relevant herein, is and was employed by Defendant St. Moritz as a Regional Manager and had supervisory control over Plaintiff, including the authority to make personnel decisions concerning Plaintiff's work schedule, assignments, salary and other employment benefits, which qualifies Valdez, at all times relevant herein, as an "employer" within the meaning of the NYSHRL and the NYCHRL.

7.      At all times relevant herein, Valdez actively and directly participated in the discrimination, harassment and unlawful retaliation committed against Plaintiff.

This is a copy of a pleading filed electronically pursuant to New York State court rules (22 NYCRR §202.5-b(d)(3)(i)) which, at the time of its printout from the court system's electronic website, had not yet been reviewed and approved by the County Clerk. Because court rules (22 NYCRR §202.5[d]) authorize the County Clerk to reject filings for various reasons, readers should be aware that documents bearing this legend may not have been accepted for filing by the County Clerk.

8.    Defendant Tabler, at all times relevant herein, is and was employed by the Defendant St. Moritz as a Vice President of Human Resources. Defendant Tabler is being sued in this action as an Aider and Abettor under the NYSHRL and the NYCHRL as she aided, abetted, incited, compelled and/or coerced the acts against Plaintiff that are forbidden under the NYHRL and the NYCHRL, and/or actually participated in the conduct giving rise to Plaintiff's claims and is thereby personally liable for her discriminatory and retaliatory treatment against Plaintiff under the NYSHRL and the NYCHRL.

## JURISDICTION AND VENUE

9.    This Court has jurisdiction over Defendants pursuant to CPLR §§ 301 and 302(a) because the Defendants have their principal place of business and/or regularly transact business in the State of New York, and because Defendants have committed tortious acts within the State of New York or outside of New York arising out of that business activity, thereby causing injury in this State, and resulting in the claims made herein.

10.    Venue is proper in the County of New York under CPLR § 503 because Defendants, or some of them, maintain offices and conduct business in the County of New York. Also, a substantial part of the events forming the subject-matter of this action took place in such County.

## FACTS RELEVANT TO ALL CAUSES OF ACTION

11.    Plaintiff is a former employee of Defendant St. Moritz.

12.    In or about August 2016, Plaintiff was hired by St. Moritz for the position of Recruiter and was assigned to St. Moritz's New York City office located at 1167 6th Avenue, 5th Floor, New York, New York (the "Office"), until she resigned. Throughout her employment with St. Moritz, Plaintiff was directly supervised by, and reported to, Defendant Valdez.

This is a copy of a pleading filed electronically pursuant to New York State court rules (22 NYCRR §202.5-b(d)(3)(i)) which, at the time of its printout from the court system's electronic website, had not yet been reviewed and approved by the County Clerk. Because court rules (22 NYCRR §202.5[d]) authorize the County Clerk to reject filings for various reasons, readers should be aware that documents bearing this legend may not have been accepted for filing by the County Clerk.

13.     As the Regional Manager, Defendant Valdez was the highest-ranking manager in St. Moritz's New York City office. Upon information and belief, the decision to hire Plaintiff was made by Valdez.

14.     At all times relevant herein, Plaintiff was qualified for her position and remained a capable, faithful and exceptional employee.

15.     Unfortunately, Plaintiff's dedication to her job was overshadowed by an offensive and sexually hostile work environment where female employees, including Plaintiff, were continually subjected to pervasive and systemic discrimination and/or unlawful harassment based on their gender – perpetrated by Defendant Valdez, in particular.

16.     Valdez's repeated inappropriate and sexually charged comments and conduct are widely known throughout St. Moritz's offices, and he wields the unchecked power and authority to engage in such improper conduct with impunity.

17.     Shortly after Plaintiff's employment began, Valdez made it clear that he desired a personal, sexual relationship with Plaintiff, which Plaintiff did not desire or welcome.

18.     By way of example only, just a few months into Plaintiff's employment, Valdez began to inquire into Plaintiff's personal life as to matters concerning her family and romantic partners. Plaintiff also observed Valdez make similar inquiries to another female employee, hereinafter referred to as "Jane Doe", with whom Valdez would later have a sexual relationship[1].

19.     Valdez also began making regular, unwelcome comments towards Plaintiff centered around his sexual thoughts, acts, and erotic predilections.

---

[1] Upon information and belief, the relationship between Jane Doe – whose true identity is known to the Plaintiff – and Valdez was the subject of an internal sexual misconduct investigation by St. Moritz, eventually resulting in Jane Doe's resignation or termination in or about 2019. Based on the foregoing, Plaintiff is unsure of any privacy protections to which Jane Doe may be entitled, thus this individual will be referred to as "Jane Doe" herein.

This is a copy of a pleading filed electronically pursuant to New York State court rules (22 NYCRR §202.5-b(d)(3)(i)) which, at the time of its printout from the court system's electronic website, had not yet been reviewed and approved by the County Clerk. Because court rules (22 NYCRR §202.5[d]) authorize the County Clerk to reject filings for various reasons, readers should be aware that documents bearing this legend may not have been accepted for filing by the County Clerk.

20. Moreover, Valdez frequently commented on Plaintiff's appearance in a suggestive manner. In sum and substance, Valdez's comments to Plaintiff included the following:

(a) He told her that she "looked refreshing";

(b) He told her she "smelled good"; and

(c) He told her she "looked good in those pants, [she] should wear them more often".

21. The foregoing comments were often made in the presence of other coworkers, which only added to Plaintiff's discomfort.

22. Sadly, this sort of unwelcome conversation was the norm at the Office and occurred regularly over the course of Plaintiff's employment with St. Moritz.

23. To discourage the lewd and inappropriate comments coming from Valdez, Plaintiff eventually began wearing looser-fitting, more masculine-looking clothing to work.

24. Still, on numerous occasions, Valdez made certain comments and engaged in certain conduct which amounted to sexual advances towards Plaintiff, even commenting on the noticeably looser-fitting pants she wore at work and how they did not "fit [her physique]."

25. In early 2017, Plaintiff became so disturbed by Valdez's behavior towards her that she approached Jane Doe with her concerns. Since Plaintiff and Jane Doe were the only female employees at the Office, and because Jane Doe had been subjected to similar comments and conduct from Valdez, Plaintiff felt most comfortable discussing the matter with her.

26. Jane Doe confided in Plaintiff that Valdez sent Jane Doe "creepy" text messages unrelated to business and outside of business hours. Jane Doe also stated that Valdez tried to force her to touch him in a sexual manner. Unfortunately, however, Jane Doe was not interested in addressing her concerns with upper management and/or human resources at that time.

This is a copy of a pleading filed electronically pursuant to New York State court rules (22 NYCRR §202.5-b(d)(3)(i)) which, at the time of its printout from the court system's electronic website, had not yet been reviewed and approved by the County Clerk. Because court rules (22 NYCRR §202.5[d]) authorize the County Clerk to reject filings for various reasons, readers should be aware that documents bearing this legend may not have been accepted for filing by the County Clerk.

27.     Shortly thereafter, on February 14, 2017, Valdez gave Plaintiff a highly sexualized cartoon image of Wonder Woman as a Valentine's Day gift. The image depicts Wonder Woman with enlarged breasts, a small waist, and provocative clothing. Valdez left a note on the back of the drawing stating, "Anna, this is a reminder of how I see you. Powerful, smart, and independent."

28.     The Wonder Woman cartoon made Plaintiff extremely uncomfortable and upset.

29.     Indeed, while employed at St. Moritz, Plaintiff received numerous handwritten notes from Valdez, including the following:

(a) After asking Plaintiff on a date, Valdez handed Plaintiff a notecard on which he wrote: "Drinks", "Laughs @ Museum of Sex", "Dinner Fior De Mayo", "Ice Cream or More Drinks" and "Curfew 1030";

(b) After making an inappropriate comment to which Plaintiff objected, Valdez gave her another notecard on which he wrote: "I was kidding. I give out free hugs and hi fives. Love Sam";

(c) In another apology note, Valdez gave Plaintiff a notecard on which he wrote: "Hi Im sorry. Your awesome [sic]. Im annoying Be my friend again and I will buy you [drawn blank line] with watermelon on top. Love Sam."; and

(d) Valdez gave Plaintiff a sheet of loose-leaf with the words "I [heart] you" written on it.

30.     In addition to the handwritten notes mentioned above, Plaintiff received several inappropriate and sexually suggestive text messages from Valdez.

31.     In one such text message, Valdez described a dream he allegedly had in which he and Plaintiff were in bed together and Plaintiff removed her "Baywatch"-type bathing suit to expose her breasts to him.

32.     Because these text messages made Plaintiff uncomfortable, she would quickly change the subject, or, more often, would not reply at all.

This is a copy of a pleading filed electronically pursuant to New York State court rules (22 NYCRR §202.5-b(d)(3)(i)) which, at the time of its printout from the court system's electronic website, had not yet been reviewed and approved by the County Clerk. Because court rules (22 NYCRR §202.5[d]) authorize the County Clerk to reject filings for various reasons, readers should be aware that documents bearing this legend may not have been accepted for filing by the County Clerk.

33.     When Plaintiff did not respond, Valdez occasionally sent follow-up texts, some of which were sexually aggressive. On one occasion, after sending an inappropriate text that Plaintiff ignored, Valdez sent a follow-up text message to Plaintiff stating, "I love it when you get mad."

34.     In addition, Valdez regularly pressured Plaintiff to explain her failure to respond to his personal text messages. As a result, Plaintiff began feeling obligated to humor Valdez when he communicated with her regarding matters unrelated to business. However, Valdez oftentimes took Plaintiff's polite responses as an opportunity to make inappropriate and/or sex-related comments.

35.     By way of example only, following a text message exchange with Plaintiff, Valdez wrote, "You need to get butt … You need to feel wanted."  In other words, she needed to have sex.

36.     On another occasion, Valdez sent Plaintiff a text message that said: "You take a bath while I poop in the toilet … [w]e can talk about boys and life."

37.     As previously mentioned, and as is described in more detail below, Valdez repeatedly sought to engage Plaintiff in conversations about her personal life, especially her romantic relationships. Valdez would then exploit the personal information he was able to elicit from Plaintiff when subjecting Plaintiff to his unwanted sexual advances.

38.     Plaintiff later changed her phone number to avoid these conversations with Valdez.

39.     Valdez, however, pressured Plaintiff to give him her new phone number, citing work communications as the reason he needed it.

40.     In another example of Valdez's sexually charged hostility, on or about June 15, 2017, while Plaintiff was on a business call with an applicant, there was a loud conversation occurring between Valdez and Jane Doe which made it hard for Plaintiff to hear. Plaintiff respectfully asked Valdez and Jane Doe to lower their voices. Instead of lowering his voice, Valdez

9

This is a copy of a pleading filed electronically pursuant to New York State court rules (22 NYCRR §202.5-b(d)(3)(i)) which, at the time of its printout from the court system's electronic website, had not yet been reviewed and approved by the County Clerk. Because court rules (22 NYCRR §202.5[d]) authorize the County Clerk to reject filings for various reasons, readers should be aware that documents bearing this legend may not have been accepted for filing by the County Clerk.

spoke even louder and responded, "Suck my dick!" Plaintiff was shocked and humiliated at this response, especially because Valdez shouted loud enough for everyone in the office to hear him.

41.     Immediately thereafter, Plaintiff sent Valdez an email informing him that she was offended by his choice of words. Although Valdez apologized, he was defensive in his response.

42.     In another incident, on or about September 27, 2017, Plaintiff and Valdez attended a career fair together at the Borough of Manhattan Community College ("BMCC") as representatives of St. Moritz.

43.     While Plaintiff and Valdez were in a taxi on their way to BMCC, Plaintiff received a personal phone and became visibly upset. Seeing an opportunity to take advantage of Plaintiff's vulnerability, Valdez placed his hand over Plaintiff's hand, which was resting on her inner thigh. Plaintiff became even more dismayed by Valdez's touching her in that manner, and as soon as they arrived at BMCC she immediately jumped out of the taxi and ran, in tears, to the nearest restroom to call her mother. Later, Plaintiff did not accompany Valdez back to the Office, opting instead to take a separate mode of transportation.

44.     Realizing that his inappropriate behavior had upset Plaintiff, in the days that followed the taxi incident, Valdez sent Plaintiff a flower arrangement. Then, when Valdez noticed Plaintiff was still avoiding him at the office, he gave Plaintiff a drawing on poster paper with the words "Sorry I didn't say hi" written on it and signed "Sam I Am".

45.     Although Plaintiff thought that Valdez's statements and conduct, which amounted to sexual overtures, were inappropriate and unwelcome, she politely but resolutely made it clear that she was declining all of Valdez's sexual advances. Plaintiff repeatedly told Valdez that she had no interest in pursuing any type of relationship with him and that they were just coworkers.

46.     Nevertheless, Valdez's inappropriate behavior persisted.

10

This is a copy of a pleading filed electronically pursuant to New York State court rules (22 NYCRR §202.5-b(d)(3)(i)) which, at the time of its printout from the court system's electronic website, had not yet been reviewed and approved by the County Clerk. Because court rules (22 NYCRR §202.5[d]) authorize the County Clerk to reject filings for various reasons, readers should be aware that documents bearing this legend may not have been accepted for filing by the County Clerk.

47. One of the most egregious examples of Valdez's sexual harassment occurred in or about November 2017, while Plaintiff was home sick with a respiratory infection.

48. Plaintiff had recently moved to a new apartment in New Jersey, and while she was recovering at home from her illness, Valdez took the opportunity to personally deliver to Plaintiff certain "housewarming presents" he had purchased for her.

49. When Valdez arrived at Plaintiff's residence to deliver the gifts, Plaintiff was home with her father and a male friend. Valdez proceeded to drop off two packages.

50. One package contained a set of cooking pots, as well as some tea, honey, and cinnamon sticks. However, the second package contained a large, vibrating sex toy.

51. After he left, Valdez sent a WhatsApp message to Plaintiff wherein he directed her to open the second package – which contained the vibrating sex toy – when she was by herself. In that same message thread, he also wrote that the sex toy was Plaintiff's "new [boyfriend]".

52. Unfortunately, Plaintiff did not immediately see Valdez's message, and it was her father who opened the second package assuming he would find another "housewarming gift." Needless to say, it was not what he expected.

53. Upon seeing what was in the box, Plaintiff's father became extremely distraught and irate that his daughter had been given a vibrating sex toy by her boss, and, even worse, that Valdez had personally delivered it to her home knowing that her father was present.

54. Valdez's inappropriate "gift," and her father's reaction to it, caused Plaintiff extreme distress and embarrassment.

55. When she returned to the Office, Plaintiff, in tears, reported what had happened to several coworkers, including Jane Doe and certain supervisors who were present. One of the supervisors, who is no longer employed at St. Moritz, told Plaintiff that he was not surprised about

This is a copy of a pleading filed electronically pursuant to New York State court rules (22 NYCRR §202.5-b(d)(3)(i)) which, at the time of its printout from the court system's electronic website, had not yet been reviewed and approved by the County Clerk. Because court rules (22 NYCRR §202.5[d]) authorize the County Clerk to reject filings for various reasons, readers should be aware that documents bearing this legend may not have been accepted for filing by the County Clerk.

it because of the way in which Valdez acted towards Plaintiff at the Office. Plaintiff understood this remark to mean that Valdez's inappropriate conduct towards her was obvious to everyone.

56.     Furthermore, Ben Munoz ("Munoz"), an Operations Manager at St. Moritz, informed Plaintiff that something similar had happened in the past with another female recruiter, who ultimately left because of Valdez's improper conduct.

57.     Upon information and belief, at all relevant times herein, Valdez used his position at St. Moritz to seek out and hire young women with whom he would invariably pursue a romantic and/or sexual relationship. In essence, Valdez used his position to operate his own personal dating service, treating all the females in the Office as potential lovers.

58.     Indeed, immediately following the sex toy incident, Valdez began to focus more of his improper attention on Jane Doe. It soon became obvious that Valdez was having a sexual relationship with Jane Doe, whom he also supervised. Although this relationship was a blatant violation of St. Moritz's Non-Fraternization Policy, Valdez made sure that Plaintiff knew about it.

59.     For example, on several occasions, Valdez would loudly call Jane Doe into his office and close the door behind her. A few times, in a clear effort to get Plaintiff's attention, Valdez successfully made and maintained eye contact with Plaintiff as he was closing the door. When Jane Doe emerged from Valdez's office, it was apparent that they had just engaged in some type of sex act, which made Plaintiff extremely uncomfortable.

60.     In fact, on at least one occasion, when these "meetings" concluded, Jane Doe left Valdez's office with several shirt buttons undone, revealing her bra underneath. This wildly inappropriate workplace conduct perpetrated in Plaintiff's presence disgusted Plaintiff and contributed to the severely hostile and sexualized work environment she endured.

This is a copy of a pleading filed electronically pursuant to New York State court rules (22 NYCRR §202.5-b(d)(3)(i)) which, at the time of its printout from the court system's electronic website, had not yet been reviewed and approved by the County Clerk. Because court rules (22 NYCRR §202.5[d]) authorize the County Clerk to reject filings for various reasons, readers should be aware that documents bearing this legend may not have been accepted for filing by the County Clerk.

61.     Despite the foregoing, and since he had faced no repercussions for the sex toy incident, Valdez continued to harass and make sexual overtures towards Plaintiff.

62.     Upon information and belief, in the beginning of 2018, Valdez became aware that Plaintiff's relationship with her former boyfriend was nearing its end. As he had always done, Valdez sought to manipulate Plaintiff's emotional vulnerability by constantly inundating her with questions regarding the status of her relationship and presenting himself as a source of comfort. In this regard, Valdez frequently called Plaintiff into his office to have these conversations. Once Plaintiff was in his office, he would shut the door, which made Plaintiff more uncomfortable.

63.     During this time, Plaintiff noticed that Valdez was trying to take advantage of her situation and was aggressively pursuing her again. By way of example only, Valdez frequently made inappropriate comments to Plaintiff about her relationship and the type of man he thought she "deserved." The implication was that Valdez was the type of man that she deserved.

64.     Moreover, in or about April 2018, Valdez overheard Plaintiff on the phone with her then-boyfriend engaged in an emotional conversation. After Plaintiff ended the call, Valdez entered her office without warning and began giving Plaintiff his unsolicited opinions about her personal life, among other things, and made more unwanted sexual advances. Plaintiff, in a highly emotional state, strongly objected to Valdez's comments and demanded to be left alone.

65.     Thereafter, on or about April 10, 2018, Valdez gave Plaintiff a sealed envelope with the words "Open Me On The Bus" written on it. This envelope contained another handwritten letter from Valdez to Plaintiff which stated, in pertinent part:

> *Hi I want to apologize for the words I choose to describe who you are. You've shown me who you are or a beautiful image of who you are and you have a person with a tight grip on you. That grip changes your judgment skills. Although we are work friends I value you more than you know. Your happiness means a lot to me ...*

13

This is a copy of a pleading filed electronically pursuant to New York State court rules (22 NYCRR §202.5-b(d)(3)(i)) which, at the time of its printout from the court system's electronic website, had not yet been reviewed and approved by the County Clerk. Because court rules (22 NYCRR §202.5[d]) authorize the County Clerk to reject filings for various reasons, readers should be aware that documents bearing this legend may not have been accepted for filing by the County Clerk.

66.     At that point, Plaintiff's tolerance for the discriminatory and demeaning workplace environment had worn extremely thin, and she explicitly complained to Valdez that his sexual, personal, and invasive comments and conduct made her feel great stress and discomfort.

67.     Despite Plaintiff's complaints, Valdez made no efforts to moderate his discriminatory and harassing behavior. Instead, Valdez became hostile and began to unlawfully retaliate against Plaintiff for adamantly refusing his overtures and for complaining about his behavior, which further contributed to the abusive work environment he had created.

68.     By way of example only, in or about May 2018, Valdez cut Plaintiff's work hours, resulting in a decrease in her pay.

69.     Furthermore, upon information and belief, Valdez knew that Jane Doe had developed a contentious relationship with Plaintiff stemming from Jane Doe's jealousy over Valdez's overtures towards Plaintiff. Thus, Valdez, seeking to exploit the acrimony between the only two females in the Office – one of whom he was in a sexual relationship with and the other he apparently wanted a relationship with – told Jane Doe that Plaintiff had unsuccessfully tried to pursue a relationship with him, which he supposedly rebuffed. As a result, Jane Doe became more openly hostile towards Plaintiff and actively tried to have her terminated.

70.     Over the next year or so, Jane Doe not only sabotaged Plaintiff's work, but she also documented Plaintiff's purported errors to create a record that Valdez could use to justify any prospective adverse employment action he took against Plaintiff.

71.     Additionally, because of her relationship with Valdez, Jane Doe became Valdez's *de facto* second-in-command, which granted her an unofficial level of authority over Plaintiff.

This is a copy of a pleading filed electronically pursuant to New York State court rules (22 NYCRR §202.5-b(d)(3)(i)) which, at the time of its printout from the court system's electronic website, had not yet been reviewed and approved by the County Clerk. Because court rules (22 NYCRR §202.5[d]) authorize the County Clerk to reject filings for various reasons, readers should be aware that documents bearing this legend may not have been accepted for filing by the County Clerk.

72.     Upon information and belief, Valdez directed and assisted Jane Doe in her efforts to establish a basis for Plaintiff's termination, which is the outcome they both desired. In sum, Valdez used Jane Doe as a proxy to do his dirty work.

73.     By way of example only, on or about December 12, 2018, based on allegations made by Jane Doe, Valdez reprimanded Plaintiff for failing to obtain important paperwork from an applicant. In response to these allegations, Plaintiff vigorously defended herself in an email exchange with Valdez that continued into the next day.

74.     On December 13, 2018, Plaintiff sent Valdez her final email on the subject and concluded with the following sentence:

*The back and forth, harassing, the lies have to stop Sam and that's all I'm saying.*

75.     By making the above statement, Plaintiff was again putting Valdez on notice that his conduct towards her was unacceptable. Still, Valdez was not deterred.

76.     Shortly after Plaintiff sent the December 13th email, Valdez called Plaintiff on the phone and told her that he was speaking to a "lawyer friend" of his regarding a "harassment email" he had received. He then menacingly read the last sentence of Plaintiff's December 13th email in its entirety to her. This incident was simply an escalation of Valdez's psychological abuse.

77.     After the above episode, Plaintiff confronted Jane Doe about the hostility between them. During this confrontation, Jane Doe questioned Plaintiff about Plaintiff's alleged romantic involvement with Valdez, and she further conceded that her hostility towards Plaintiff was based on what Valdez had told her. Plaintiff made it clear that she was not, nor had she ever been interested in pursuing a romantic relationship with Valdez.

This is a copy of a pleading filed electronically pursuant to New York State court rules (22 NYCRR §202.5-b(d)(3)(i)) which, at the time of its printout from the court system's electronic website, had not yet been reviewed and approved by the County Clerk. Because court rules (22 NYCRR §202.5[d]) authorize the County Clerk to reject filings for various reasons, readers should be aware that documents bearing this legend may not have been accepted for filing by the County Clerk.

78. Thereafter, on January 17, 2019, Plaintiff arrived at the office to find her personal belongings removed from her desk and scattered on the floor. She immediately complained to Valdez via email about this harassing invasion of her privacy.

79. In response, Valdez sent an email to all the employees in the office stating:

*Team,*

*We need to make sure that we are respectful to everyone's work space. If there is something that's needed just ask.*

*These type of thing [sic] can make an uncomfortable work environment.*

80. Plaintiff understood Valdez's mention of an "uncomfortable work environment" as a veiled reference to his earlier phone call in which he taunted Plaintiff about her claims of harassment against him. After reading his response, Plaintiff knew that Valdez was the individual responsible for removing her personal belongings from her desk and putting them on the floor, and that he did so in retaliation for the conversation she had had with Jane Doe only days earlier.

81. Although Plaintiff competently performed her job at St. Moritz, Valdez himself contrived unwarranted allegations of her poor employment performance and workplace attitude and made several complaints via email about Plaintiff. Plaintiff found Valdez's conduct notable because he had previously discussed any work-related concerns in private with Plaintiff, but he now appeared to be actively attempting to make a record of Plaintiff's purported misconduct.

82. Beginning on or about March 2, 2019, Plaintiff and Valdez engaged in a particularly heated discussion via email after Valdez falsely accused Plaintiff of violating work protocol. Over the next two weeks, several emails were sent back and forth between Plaintiff and Valdez.

83. During this email exchange, on March 6, 2019, Plaintiff came into the office and again noticed that her personal belongings had been moved from her desk. However, this time, a post-it note was left on the desk, which read: "Sorry Cleaning Your Belongings! – Cleaner". Upon

This is a copy of a pleading filed electronically pursuant to New York State court rules (22 NYCRR §202.5-b(d)(3)(i))
which, at the time of its printout from the court system's electronic website, had not yet been reviewed and
approved by the County Clerk. Because court rules (22 NYCRR §202.5[d]) authorize the County Clerk to reject
filings for various reasons, readers should be aware that documents bearing this legend may not have been
accepted for filing by the County Clerk.

CAUTION: THIS DOCUMENT HAS NOT YET BEEN REVIEWED BY THE COUNTY CLERK. (See below.)
NYSCEF DOC. NO. 1

Case 1:21-cv-02620   Document 1-1   Filed 03/26/21   Page 18 of 39

INDEX NO. UNASSIGNED

RECEIVED NYSCEF: 02/05/2021

seeing this note, Plaintiff was convinced that Valdez had once again gone through her personal belongings in her desk. Despite the exclusion of his name, Plaintiff reasoned that the note was left by Valdez because he had frequently left similar notes on her desk in the past. It also seemed odd to Plaintiff that the cleaning staff would have left such a note.

84.     Around this time, Plaintiff began experiencing tremendous levels of stress because of Valdez's treatment of her and the complete breakdown in civil discourse between them. To calm her anxiety, Plaintiff felt it was necessary to take some time off from work.

85.     To that end, on or about March 2, 2019, Plaintiff attempted to contact Defendant Tabler to inquire as to how many days of paid sick leave ("PSL") she was entitled to, because Plaintiff did not trust Valdez to be truthful with her. Plaintiff also wanted to advise Tabler that Plaintiff was taking time off because of Valdez's conduct. At that point, Plaintiff was still too afraid and embarrassed to report the sexual harassment but wanted to make human resources aware of the anxiety Valdez was causing her.

86.     Despite sending Tabler multiple emails over a two-week period, Tabler did not provide a prompt response. Instead, on or about March 14, 2019, Tabler contacted Plaintiff and indicated that any questions regarding PSL are more appropriately addressed directly with Valdez and she did not address the "stressful situation" Plaintiff had mentioned in her emails.

87.     On March 17, 2019, Tabler sent Plaintiff an email confirming that Plaintiff was entitled to a full week of PSL every year. Tabler further indicated that she would "confirm with Sam" whether Plaintiff had used any PSL that year.

88.     Between March 8 and 21, 2019, Plaintiff used three (3) days of her PSL.

89.     On or about March 21, 2019, Plaintiff received an email from Valdez which stated:

*Ana,*

This is a copy of a pleading filed electronically pursuant to New York State court rules (22 NYCRR §202.5-b(d)(3)(i)) which, at the time of its printout from the court system's electronic website, had not been reviewed and approved by the County Clerk. Because court rules (22 NYCRR §202.5[d]) authorize the County Clerk to reject filings for various reasons, readers should be aware that documents bearing this legend may not have been accepted for filing by the County Clerk.

*I noticed that you have cleaned out your office space. If there so [sic] something I should know or be expecting? We have not had a chat in some time which always helps the soul. Please to my office [sic] when you can let me know if 0930 works.*

90.    In response, Plaintiff advised Valdez that she did not clean out her office space, but rather, she brought certain personal belongings home because of the continued invasion of her privacy she was experiencing at the Office.

91.    That same day, Plaintiff submitted her time sheets to Valdez for approval for the pay period of March 8, 2019 through March 21, 2019.

92.    When Plaintiff received her paycheck, she noticed that she was not paid for one of her PSL days. Upon realizing the discrepancy, Plaintiff immediately confronted Valdez. In response, Valdez told Plaintiff that he did not include that final day because he "did not know what [Plaintiff] was using [the days] for." Plaintiff knew that she was entitled to these days off without an explanation, and that Valdez's decision in this regard was arbitrary and wrong.

93.    Nevertheless, on March 27, 2019, Valdez sent Plaintiff an email wherein he conceded that Plaintiff was in fact entitled to be paid for the relevant PSL day and claimed to have accidentally missed it when he was reviewing her time sheet. Valdez also appeared angry that Plaintiff went directly to Tabler to inquire about her PSL.

94.    Thereafter, upon information and belief, Valdez's sexual relationship with Jane Doe was reported to St. Moritz's Human Resources Department.

95.    This event preceded an incident at the Office during which Jane Doe became visibly angry with Valdez because he would not give Jane Doe approval for something she needed. During this incident, Jane Doe stated to Valdez, in sum and substance, "you approved of it when we got the conference room to be private." Jane Doe shouted this statement loudly enough for everyone in the Office to hear, and it appeared to Plaintiff that Jane Doe had done so on purpose.

This is a copy of a pleading filed electronically pursuant to New York State court rules (22 NYCRR §202.5-b(d)(3)(i)) which, at the time of its printout from the court system's electronic website, had not yet been reviewed and approved by the County Clerk. Because court rules (22 NYCRR §202.5[d]) authorize the County Clerk to reject filings for various reasons, readers should be aware that documents bearing this legend may not have been accepted for filing by the County Clerk.

96.     Jane Doe later told Plaintiff that Valdez had "crossed the line."

97.     In or about April 2019, Tabler contacted Plaintiff by phone to inquire about the relationship between Valdez and Jane Doe. During this conversation, Plaintiff told Tabler what she knew about Valdez's relationship with Jane Doe and also about the difficult and uncomfortable work environment Valdez created in general.

98.     Upon information and belief, Jane Doe was subsequently terminated or resigned from her position at St. Moritz, but nothing further was done to correct Valdez's conduct.

99.     In the wake of Jane Doe's departure, Valdez's discriminatory and retaliatory conduct towards Plaintiff intensified. Among other things, Valdez stripped Plaintiff of certain job duties, purposely gave her conflicting information about what was expected of her and subjected her to increased scrutiny in the performance of her job. In addition, Valdez intentionally left Plaintiff out of important internal communications, which prevented Plaintiff from obtaining information necessary to the performance of her duties.

100.     A few months later, on or about June 3, 2019, while Plaintiff was speaking with Munoz and Jane Doe's replacement, Shauna Richardson ("Richardson"), Valdez suddenly came over and put his arm around Plaintiff and left it there for an uncomfortably long time. Plaintiff was frozen with fear and embarrassment.

101.     Immediately thereafter, Richardson, having noticed Plaintiff's reaction to Valdez's inappropriate touching, privately asked Plaintiff if the situation made her uncomfortable. Plaintiff then pulled Richardson into the office they shared, closed the door and proceeded to discuss her feelings about the incident as well as Valdez's sexual harassment in general.

19

This is a copy of a pleading filed electronically pursuant to New York State court rules (22 NYCRR §202.5-b(d)(3)(i)) which, at the time of its printout from the court system's electronic website, had not yet been reviewed and approved by the County Clerk. Because court rules (22 NYCRR §202.5[d]) authorize the County Clerk to reject filings for various reasons, readers should be aware that documents bearing this legend may not have been accepted for filing by the County Clerk.

102.    Upon information and belief, Valdez was aware that they were discussing his actions, which prompted him to send an email to both Plaintiff and Richardson – the only two women in the office – advising them that they were not allowed to keep the door closed.

103.    After this incident, Valdez demanded that Plaintiff send him activity reports for the sole purpose of documenting her whereabouts at all times. Upon information and belief, none of the male employees at the Office were required to submit similar reports.

104.    By the summer of 2019, Plaintiff could no longer bear the severe and pervasive hostile and discriminatory work environment to which she was subjected at St. Moritz and decided to report all of Valdez's inappropriate and harassing behavior, as described above, to Tabler.

105.    Over the next several months, Plaintiff and Tabler had numerous phone conversations wherein Plaintiff detailed the years of sexual harassment and abuse she endured from Valdez because of her gender. Plaintiff also provided Tabler with several items of evidence in support of her claims, and Tabler promised Plaintiff that she would investigate.

106.    Upon information and belief, Tabler did not conduct any significant investigation into the events set forth herein. Rather, Tabler and St. Moritz ignored them, thereby condoning them, and enabling the situation to endure.

107.    By way of example only, when Plaintiff asked if Tabler had spoken to Valdez about the sex toy, Tabler indicated that she did not do so specifically, but acknowledged that Valdez admitted to giving Plaintiff a "gift." Tabler did, however, confirm that she was aware, by Valdez's own admission, that Valdez had been interested in pursuing a romantic relationship with Plaintiff.

108.    During her conversations with Plaintiff, Tabler also acknowledged that "this is just another layer of the whole [Jane Doe]-Sam thing that I understand now," indicating that Valdez's misconduct extended beyond what Plaintiff was experiencing.

This is a copy of a pleading filed electronically pursuant to New York State court rules (22 NYCRR §202.5-b(d)(3)(i)) which, at the time of its printout from the court system's electronic website, had not yet been reviewed and approved by the County Clerk. Because court rules (22 NYCRR §202.5[d]) authorize the County Clerk to reject filings for various reasons, readers should be aware that documents bearing this legend may not have been accepted for filing by the County Clerk.

109.    However, during one conversation, Tabler also flippantly dismissed Valdez's behavior as an "error in judgment."

110.    This made Plaintiff feel even more uncomfortable and utterly confounded.

111.    Irrespective of the foregoing, Tabler and/or St. Moritz made no serious efforts to address the complaints of discrimination and harassment Plaintiff made about Valdez, despite Tabler acknowledging the "longstanding" nature of it.

112.    In fact, despite knowing that many of St. Moritz's employees with managerial and supervisory functions were independently aware of Valdez's misconduct, including the field supervisors, Tabler cited "not want[ing] to create unnecessary information sharing" as the reason for never questioning them about Valdez's conduct. Thus, no action was taken by anyone employed by St. Moritz to correct or otherwise address Valdez's misconduct.

113.    Based on the lack of any responsive action by Tabler or St. Moritz to address her complaints of sexual harassment and discrimination, Plaintiff felt that Tabler and St. Moritz were telling her that her feelings of pain and humiliation were illegitimate and worthless.

114.    In or about August 2019, Plaintiff applied for and was granted leave under the Family and Medical Leave Act ("FMLA") based on the severe anxiety and related gastrointestinal issues she was experiencing from the abusive and hostile work environment at St. Moritz.

115.    Plaintiff remained on leave through October 2019.

116.    Plaintiff returned to work at the end of November 2019. However, she resigned in December 2019 because of the severe and pervasively hostile and intimidating work environment created primarily by Valdez – a workplace where Plaintiff felt constantly harassed, undermined and pressured to resign.

21

This is a copy of a pleading filed electronically pursuant to New York State court rules (22 NYCRR §202.5-b(d)(3)(i)) which, at the time of its printout from the court system's electronic website, had not yet been reviewed and approved by the County Clerk. Because court rules (22 NYCRR §202.5[d]) authorize the County Clerk to reject filings for various reasons, readers should be aware that documents bearing this legend may not have been accepted for filing by the County Clerk.

117.     As a result of the foregoing discriminatory and retaliatory conduct, Plaintiff has suffered the indignity of sexual harassment and discrimination, the invasion of her rights to be free from sexual harassment and discrimination, and great humiliation and embarrassment, which has manifested itself in emotional stress for which Plaintiff has been required to seek medical attention.

## AS AND FOR A FIRST CAUSE OF ACTION
### (Sexual Harassment and Discrimination – New York State Human Rights Law)

118.     Plaintiff repeats and realleges each and every allegation stated above as if fully set forth herein.

119.     NYHRL § 296 provides, in relevant part:

> It shall be an unlawful discriminatory practice: (a) For an employer or licensing agency, because of the age, race, creed, color, national origin, sexual orientation, military status, sex, disability, predisposing genetic characteristics, or marital status of any individual, to refuse to hire or employ or to bar or to discharge from employment such individual or to discriminate against such individual in compensation or in terms, conditions or privileges of employment.

120.     During the course of her employment, Plaintiff was subjected to unwelcome sexual harassment and discrimination based on her gender, marital status, sexual preference and/or other civilly protected classifications.

121.     Defendants have discriminated against Plaintiff by denying to her the equal terms and conditions of employment, including but not limited to subjecting her to disparate working conditions and denying her the opportunity to work in an employment setting free from unlawful discrimination and harassment.

122.     As described above, Plaintiff's direct supervisor, Defendant Valdez, engaged in a continual course of conduct which was designed to compel Plaintiff to submit to Valdez's sexual advances. Thus, among other things, the terms, conditions and privileges of her employment were dependent on whether or not she engaged in a sexual and/or romantic relationship with Valdez.

This is a copy of a pleading filed electronically pursuant to New York State court rules (22 NYCRR §202.5-b(d)(3)(i)) which, at the time of its printout from the court system's electronic website, had not yet been reviewed and approved by the County Clerk. Because court rules (22 NYCRR §202.5[d]) authorize the County Clerk to reject filings for various reasons, readers should be aware that documents bearing this legend may not have been accepted for filing by the County Clerk.

123.     Valdez subjected Plaintiff to sexual harassment and discrimination that was so severe and pervasive that it altered the terms, conditions and privileges of Plaintiff's employment.

124.     Defendant St. Moritz was, at all times relevant herein, responsible for ensuring a workplace free from harassment, discrimination and retaliation.

125.     Valdez, at all times relevant herein, was acting as and for St. Moritz.

126.     As a regional manager at St. Moritz, and the highest-ranking manager at the Office, Valdez was a high-level managerial employee and/or someone sufficiently elevated in St. Moritz's business organization to be viewed as its proxy. Thus, St. Moritz is liable for the sexual harassment and other discriminatory conduct perpetrated by Valdez.

127.     Notwithstanding the foregoing, St. Moritz was aware of Valdez's sexual harassment and other discriminatory conduct towards Plaintiff and took no steps to stop it even after Plaintiff complained.

128.     Also, upon information and belief, many of St. Moritz's employees with managerial and supervisory functions were independently aware of Valdez's misconduct, including Defendant Tabler. Thus, St. Moritz knew or should have known of Valdez's misconduct, and instead of preventing and/or remedying such misconduct, St. Moritz condoned and/or acquiesced in it.

129.     Defendants failed to act on Plaintiff's complaints because she is a woman.

130.     The sexual harassment, discrimination and retaliation that Plaintiff experienced was so severe and created working conditions so unpleasant and intolerable as to compel any reasonable person to resign from her employment.

131.     As a result of the severe and pervasive sexual harassment, discrimination and retaliation she experienced, Plaintiff was constructively discharged from her employment.

23

This is a copy of a pleading filed electronically pursuant to New York State court rules (22 NYCRR §202.5-b(d)(3)(i)) which, at the time of its printout from the court system's electronic website, had not yet been reviewed and approved by the County Clerk. Because court rules (22 NYCRR §202.5[d]) authorize the County Clerk to reject filings for various reasons, readers should be aware that documents bearing this legend may not have been accepted for filing by the County Clerk.

132.     As a direct and proximate result of Defendants' harassment, discrimination and retaliation described herein, Plaintiff has suffered and continues to suffer severe mental anguish and emotional distress, including but not limited to depression, humiliation, embarrassment, stress and anxiety, loss of self-esteem and self-confidence, emotional pain and suffering, as well as physical manifestations of pain and suffering.

133.     Plaintiff is therefore entitled to monetary damages, including compensatory damages, punitive damages, statutory damages and special damages, as well as her costs, fees (including attorneys' fees) and disbursements, in amounts to be determined at trial.

### AS AND FOR A SECOND CAUSE OF ACTION
**(Hostile Work Environment – New York State Human Rights Law)**

134.     Plaintiff repeats and realleges each and every allegation stated above as if fully set forth herein.

135.     NYSHRL § 296 *et seq*. provides Plaintiff with a claim based upon the hostile work environment maintained at St. Moritz.

136.     As described above, Valdez constantly and persistently, sexually harassed Plaintiff, which created an intimidating, offensive, abusive, discriminatory and otherwise hostile work environment.

137.     Valdez's misconduct toward, and harassment of, Plaintiff included, but is not limited to, the following:

(a) Asking Plaintiff to go out with him for drinks and dinner, unrelated to business;
(b) Complimenting Plaintiff on her choice of clothes;
(c) Telling Plaintiff how he felt about her personally and flirting with Plaintiff;
(d) Incessantly commenting on Plaintiff's romantic relationships;
(e) Repeatedly making sexual advances towards Plaintiff;
(f) Standing unnecessarily close to Plaintiff when speaking;
(g) Unnecessarily interrupting Plaintiff's conversations with others;
(h) Inappropriately touching Plaintiff;

This is a copy of a pleading filed electronically pursuant to New York State court rules (22 NYCRR §202.5-b(d)(3)(i)) which, at the time of its printout from the court system's electronic website, had not yet been reviewed and approved by the County Clerk. Because court rules (22 NYCRR §202.5[d]) authorize the County Clerk to reject filings for various reasons, readers should be aware that documents bearing this legend may not have been accepted for filing by the County Clerk.

(i)   Making inappropriate inquiries concerning what Plaintiff was doing, who she was with, etc. when she was not at the Office;

(j)   Requiring that Plaintiff provide status reports to track her whereabouts, where other employees were not required to submit such reports.

138.   The foregoing occurred regularly over the course of Plaintiff's employment with St. Moritz, and they were by no means isolated incidents.

139.   By virtue of Defendants' actions and misconduct, the workplace at St. Moritz is permeated with discriminatory harassment, intimidation, ridicule, and insult that is sufficiently severe and/or pervasive so as to alter the conditions of Plaintiff's employment and create an intimidating, offensive, abusive, discriminatory and hostile working environment.

140.   Perhaps even worse, the various instances of harassment, discrimination and retaliation described above were perpetrated by Plaintiff's supervisors and managers, including Defendant Valdez, and St. Moritz permitted the foregoing behavior to persist and continue knowing that such harassment, discrimination and retaliation was ongoing, without taking any appropriate or corrective action to stop it, thereby condoning and/or acquiescing to it.

141.   The toxic and abusive work environment at the Office caused Plaintiff significant emotional distress, humiliation and embarrassment.

142.   The sexual harassment, discrimination and retaliation that Plaintiff experienced was so severe and created working conditions so unpleasant and intolerable as to compel any reasonable person to resign from her employment.

143.   As a result of the sexual harassment, discrimination and retaliation she experienced, Plaintiff was constructively discharged from her employment.

144.   As a direct and proximate result of Defendants' harassment, discrimination and retaliation described herein, Plaintiff has suffered and continues to suffer severe mental anguish and emotional distress, including but not limited to depression, humiliation, embarrassment, stress

25

This is a copy of a pleading filed electronically pursuant to New York State court rules (22 NYCRR §202.5-b(d)(3)(i)) which, at the time of its printout from the court system's electronic website, had not yet been reviewed and approved by the County Clerk. Because court rules (22 NYCRR §202.5[d]) authorize the County Clerk to reject filings for various reasons, readers should be aware that documents bearing this legend may not have been accepted for filing by the County Clerk.

and anxiety, loss of self-esteem and self-confidence, emotional pain and suffering, as well as physical manifestations of pain and suffering.

145.   Plaintiff is therefore entitled to monetary damages, including compensatory damages, punitive damages, statutory damages and special damages, as well as her costs, fees (including attorneys' fees) and disbursements, in amounts to be determined at trial.

## AS AND FOR A THIRD CAUSE OF ACTION
### (Retaliation – New York State Human Rights Law)

146.   Plaintiff repeats and realleges each and every allegation stated above as if fully set forth herein.

147.   NYHRL § 296(7) provides:

> It shall be an unlawful discriminatory practice for any person engaged in any activity to which this section applies to retaliate or discriminate against any person because he or she has opposed any practices forbidden under this article or because he or she has filed a complaint, testified or assisted in any proceeding under this article.

148.   As described above, Defendants retaliated against Plaintiff for, among other things, refusing Valdez's sexual advances, complaining about Valdez's misconduct, and refusing to partake in the inappropriate and abusive culture permeating St. Moritz.

149.   Defendants retaliated against Plaintiff by, among other things, stripping her of important job duties, purposely giving her conflicting information about what was expected of her, leaving her out of important internal communications necessary for the performance of her job, denying her paid time off to which she was entitled, and subjecting her to increased scrutiny.

150.   As a direct and proximate result of Defendants' harassment, discrimination and retaliation described herein, Plaintiff has suffered and continues to suffer severe mental anguish and emotional distress, including but not limited to depression, humiliation, embarrassment, stress

This is a copy of a pleading filed electronically pursuant to New York State court rules (22 NYCRR §202.5-b(d)(3)(i)) which, at the time of its printout from the court system's electronic website, had not yet been reviewed and approved by the County Clerk. Because court rules (22 NYCRR §202.5[d]) authorize the County Clerk to reject filings for various reasons, readers should be aware that documents bearing this legend may not have been accepted for filing by the County Clerk.

and anxiety, loss of self-esteem and self-confidence, emotional pain and suffering, as well as physical manifestations of pain and suffering.

151.    Plaintiff is therefore entitled to monetary damages, including compensatory damages, punitive damages, statutory damages and special damages, as well as her costs, fees (including attorneys' fees) and disbursements, in amounts to be determined at trial.

### AS AND FOR A FOURTH CAUSE OF ACTION
**(Sexual Harassment and Discrimination – NYCHRL)**

152.    Plaintiff repeats and realleges each and every allegation stated above as if fully set forth herein.

153.    Gender is a protected classification as defined by the NYCHRL, NYC Admin. Code § 8-102(23), and so Plaintiff is a protected person in this action where she faced discrimination based on her gender, marital status, sexual preference and/or other civilly protected classifications

154.    NYC Admin. Code § 8-107, provides, in pertinent part:

1. Employment. It shall be an unlawful discriminatory practice:
(a) For an employer or an employee or agent thereof, because of the actual or perceived … gender, … marital status, partnership status, … sexual orientation, uniformed service or alienage or citizenship status of any person:

***

(3) To discriminate against such person in compensation or in terms, conditions, or privileges of employment.
13. Employer liability for discriminatory conduct by employee, agent or independent contractor.
    a. An employer shall be liable for an unlawful discriminatory practice based upon the conduct of an employee or agent which is in violation of any provision of this section other than subdivisions 1 and 2 of this section.
    b. An employer shall be liable for an unlawful discriminatory practice based upon the conduct of an employee or agent which is in violation of subdivision 1 or 2 of this section only where:
        (1) The employee or agent exercised managerial or supervisory responsibility; or
        (2) The employer knew of the employee's or agent's discriminatory conduct, and acquiesced in such conduct or failed to take immediate and

27

This is a copy of a pleading filed electronically pursuant to New York State court rules (22 NYCRR §202.5-b(d)(3)(i)) which, at the time of its printout from the court system's electronic website, had not yet been reviewed and approved by the County Clerk. Because court rules (22 NYCRR §202.5[d]) authorize the County Clerk to reject filings for various reasons, readers should be aware that documents bearing this legend may not have been accepted for filing by the County Clerk.

appropriate corrective action; an employer shall be deemed to have knowledge of an employee's or agent's discriminatory conduct where that conduct was known by another employee or agent who exercised managerial or supervisory responsibility; or

(3) The employer should have known of the employee's or agent's discriminatory conduct and failed to exercise reasonable diligence to prevent such discriminatory conduct.

155. Additionally, the Administrative Code is to be construed as liberally as possible under the law.

a. The provisions of this title shall be construed liberally for the accomplishment of the uniquely broad and remedial purposes thereof, regardless of whether federal or
New York state civil and human rights laws, including those laws with provisions worded comparably to provisions of this title, have been construed.

b. Exceptions to and exemptions from the provisions of this title shall be construed narrowly in order to maximize the deterrence of discriminatory conduct.

NYC Admin. Code § 8-130.

156. In addition to all of the foregoing allegations, Defendants violated the aforementioned statutes and discriminated against Plaintiff since Plaintiff was treated disparately from and less well than other employees of St. Moritz because of, among other things, her gender, marital status, sexual preference and/or other civilly protected classification, as well as her unwillingness to engage in sexual behavior with her supervisor.

157. Defendants have discriminated against Plaintiff by denying to her the equal terms and conditions of employment, including but not limited to subjecting her to disparate working conditions and denying her the opportunity to work in an employment setting free from unlawful discrimination and harassment.

158. As described above, Plaintiff's direct supervisor, Defendant Valdez, engaged in a continual course of conduct was designed to compel Plaintiff to submit to Valdez's sexual

28

This is a copy of a pleading filed electronically pursuant to New York State court rules (22 NYCRR §202.5-b(d)(3)(i)) which, at the time of its printout from the court system's electronic website, had not yet been reviewed and approved by the County Clerk. Because court rules (22 NYCRR §202.5[d]) authorize the County Clerk to reject filings for various reasons, readers should be aware that documents bearing this legend may not have been accepted for filing by the County Clerk.

advances. Thus, among other things, the terms, conditions and privileges of her employment were dependent on whether or not she engaged in a sexual and/or romantic relationship with Valdez.

159.    Valdez subjected Plaintiff to sexual harassment and discrimination that was so severe and pervasive that it altered the terms, conditions and privileges of Plaintiff's employment.

160.    Defendant St. Moritz was, at all times relevant herein, responsible for ensuring a workplace free from harassment, discrimination and retaliation.

161.    Valdez, at all times relevant herein, was acting as and for St. Moritz.

162.    As a regional manager at St. Moritz, and the highest-ranking manager at the Office, Valdez was a high-level managerial employee and/or someone sufficiently elevated in St. Moritz's business organization to be viewed as its proxy. Thus, St. Moritz is liable for the sexual harassment and other discriminatory conduct perpetrated by Valdez.

163.    Notwithstanding the foregoing, St. Moritz was aware of Valdez's sexual harassment and other discriminatory conduct towards Plaintiff and took no steps to stop it even after Plaintiff complained.

164.    Also, upon information and belief, many of St. Moritz's employees with managerial and supervisory functions were independently aware of Valdez's misconduct, including Defendant Tabler. Thus, St. Moritz knew or should have known of Valdez's misconduct, and instead of preventing and/or remedying such misconduct, St. Moritz condoned and/or acquiesced in it.

165.    Defendants failed to act on Plaintiff's complaints because she is a woman.

166.    The sexual harassment, discrimination and retaliation that Plaintiff experienced was so severe and created working conditions so unpleasant and intolerable as to compel any reasonable person to resign from her employment.

This is a copy of a pleading filed electronically pursuant to New York State court rules (22 NYCRR §202.5-b(d)(3)(i)) which, at the time of its printout from the court system's electronic website, had not yet been reviewed and approved by the County Clerk. Because court rules (22 NYCRR §202.5[d]) authorize the County Clerk to reject filings for various reasons, readers should be aware that documents bearing this legend may not have been accepted for filing by the County Clerk.

167.    As a result of the severe and pervasive sexual harassment, discrimination and retaliation she experienced, Plaintiff was constructively discharged from her employment.

168.    As a direct and proximate result of Defendants' harassment, discrimination and retaliation described herein, Plaintiff has suffered and continues to suffer severe mental anguish and emotional distress, including but not limited to depression, humiliation, embarrassment, stress and anxiety, loss of self-esteem and self-confidence, emotional pain and suffering, as well as physical manifestations of pain and suffering.

169.    Plaintiff is therefore entitled to monetary damages, including compensatory damages, punitive damages, statutory damages and special damages, as well as her costs, fees (including attorneys' fees) and disbursements, in amounts to be determined at trial.

### AS AND FOR A FIFTH CAUSE OF ACTION
**(Hostile Work Environment – New York City Human Rights Law)**

170.    Plaintiff repeats and realleges each and every allegation stated above as if fully set forth herein.

171.    As described above, Plaintiff was subjected to a hostile work environment on account of, among other things, her gender, marital status, sexual preference and/or other civilly protected classification, and her unwillingness to engage in sexual behavior with her supervisor.

172.    By virtue of Defendants' actions and misconduct, the Office and workplace at St. Moritz is permeated with discriminatory harassment, intimidation, ridicule, and insult that is sufficiently severe and/or pervasive so as to alter the conditions of Plaintiff's employment and create an intimidating, offensive, abusive, discriminatory and hostile working environment.

173.    Perhaps even worse, the various instances of harassment, discrimination and retaliation described above were perpetrated by Plaintiff's supervisors and managers, including Defendant Valdez, and St. Moritz permitted the foregoing behavior to persist and continue

This is a copy of a pleading filed electronically pursuant to New York State court rules (22 NYCRR §202.5-b(d)(3)(i)) which, at the time of its printout from the court system's electronic website, had not yet been reviewed and approved by the County Clerk. Because court rules (22 NYCRR §202.5[d]) authorize the County Clerk to reject filings for various reasons, readers should be aware that documents bearing this legend may not have been accepted for filing by the County Clerk.

knowing that such harassment, discrimination and retaliation was ongoing, without taking any appropriate or corrective action to stop it, thereby condoning and/or acquiescing to it.

174.    The Defendants' actions and misconduct toward Plaintiff were deliberately discriminatory.

175.    The toxic and abusive work environment at the Office caused Plaintiff significant emotional distress, humiliation and embarrassment.

176.    The sexual harassment, discrimination and retaliation that Plaintiff experienced was so severe and created working conditions so unpleasant and intolerable as to compel any reasonable person to resign from her employment.

177.    As a result of the sexual harassment, discrimination and retaliation she experienced, Plaintiff was constructively discharged from her employment.

178.    As a direct and proximate result of Defendants' harassment, discrimination and retaliation described herein, Plaintiff has suffered and continues to suffer severe mental anguish and emotional distress, including but not limited to depression, humiliation, embarrassment, stress and anxiety, loss of self-esteem and self-confidence, emotional pain and suffering, as well as physical manifestations of pain and suffering.

179.    Plaintiff is therefore entitled to monetary damages, including compensatory damages, punitive damages, statutory damages and special damages, as well as her costs, fees (including attorneys' fees) and disbursements, in amounts to be determined at trial.

### AS AND FOR A SIXTH CAUSE OF ACTION
**(Retaliation – New York City Human Rights Law)**

180.    Plaintiff repeats and realleges each and every allegation stated above as if fully set forth herein.

181.    NYC Admin. Code § 8-107(7) provides, in pertinent part:

31

This is a copy of a pleading filed electronically pursuant to New York State court rules (22 NYCRR §202.5-b(d)(3)(i)) which, at the time of its printout from the court system's electronic website, had not yet been reviewed and approved by the County Clerk. Because court rules (22 NYCRR §202.5[d]) authorize the County Clerk to reject filings for various reasons, readers should be aware that documents bearing this legend may not have been accepted for filing by the County Clerk.

Retaliation. It shall be unlawful discriminatory practice for any person engaged in any activity to which this chapter applies to retaliate or discriminate in any manner against any person because such person has (i) opposed any practice forbidden under this chapter, (ii) filed a complaint, testified or assisted in any proceeding under this chapter … The retaliation or discrimination complained of under this subdivision need not result in an ultimate action with respect to employment, housing or a public accommodation or in a materially adverse change in the terms and conditions of employment, housing, or a public accommodation, provided, however, that the retaliatory or discriminatory act or acts complained of must be reasonably likely to deter a person from engaging in protected activity.

182.    As described above, Defendants retaliated against Plaintiff for, among other things, refusing Valdez's sexual advances, complaining about Valdez's misconduct, and refusing to partake in the inappropriate and abusive culture permeating St. Moritz.

183.    As a direct and proximate result of Defendants' harassment, discrimination and retaliation described herein, Plaintiff has suffered and continues to suffer severe mental anguish and emotional distress, including but not limited to depression, humiliation, embarrassment, stress and anxiety, loss of self-esteem and self-confidence, emotional pain and suffering, as well as physical manifestations of pain and suffering.

184.    Plaintiff is therefore entitled to monetary damages, including compensatory damages, punitive damages, statutory damages and special damages, as well as her costs, fees (including attorneys' fees) and disbursements, in amounts to be determined at trial.

## AS AND FOR A SEVENTH CAUSE OF ACTION
### (Aiding and Abetting)

185.    Plaintiff repeats and realleges each and every allegation stated above as if fully set forth herein.

186.    NYSHRL § 296(6) provides:

This is a copy of a pleading filed electronically pursuant to New York State court rules (22 NYCRR §202.5-b(d)(3)(i)) which, at the time of its printout from the court system's electronic website, had not yet been reviewed and approved by the County Clerk. Because court rules (22 NYCRR §202.5[d]) authorize the County Clerk to reject filings for various reasons, readers should be aware that documents bearing this legend may not have been accepted for filing by the County Clerk.

It shall be an unlawful discriminatory practice for any person to aid, abet, incite, compel or coerce the doing of any of the acts forbidden under this article, or to attempt to do so.

187.    Likewise, NYCHRL (NYC Admin. Code § 8-107(6)) provides:

Aiding and abetting. It shall be an unlawful discriminatory practice for any person to aid, abet, incite, compel or coerce the doing of any of the acts forbidden under this chapter, or to attempt to do so.

188.    Defendant Tabler aided and abetted Valdez's discrimination, harassment, hostile work environment, and retaliation by, among other things, engaging in sexually harassing behavior, and failing to investigate Valdez's misconduct or otherwise take appropriate steps to address and/or correct it.

189.    As a result of Tabler's aiding and abetting, Plaintiff suffered damages.

190.    Plaintiff is therefore entitled to monetary damages, including compensatory damages, punitive damages, statutory damages and special damages, as well as his costs, fees (including attorneys' fees) and disbursements, in amount to be determined at trial.

### AS AND FOR AN EIGHTH CAUSE OF ACTION
**(NYC Admin. Code § 8-107(29) & Labor Law § 201(g))**

191.    Plaintiff repeats and realleges each and every allegation stated above as if fully set forth herein.

192.    Pursuant to NYC Admin. Code § 8-107(29) and Labor Law § 201(g), St. Moritz was required to "conspicuously display an anti-sexual harassment rights and responsibilities poster designed by the commission, in employee breakrooms or other common areas employees gather."

193.    St. Moritz was also required to distribute an "information sheet on sexual harassment" setting forth the information required under § 8-107(29).

194.    Upon information and belief, St. Moritz never posted the information required under NYC Admin. Code § 8-107(29) and Labor Law § 201(g).

This is a copy of a pleading filed electronically pursuant to New York State court rules (22 NYCRR §202.5-b(d)(3)(i)) which, at the time of its printout from the court system's electronic website, had not been reviewed and approved by the County Clerk. Because court rules (22 NYCRR §202.5[d]) authorize the County Clerk to reject filings for various reasons, readers should be aware that documents bearing this legend may not have been accepted for filing by the County Clerk.

195.    Plaintiff is therefore entitled to monetary damages, in an amount to be determined at trial.

### AS AND FOR A NINTH CAUSE OF ACTION
**(Intentional Infliction of Emotional Distress)**

196.    Plaintiff repeats and realleges each and every allegation stated above as if fully set forth herein.

197.    Plaintiff, in her employment with Defendant St. Moritz, was subject to the authority of Valdez, as one of the regional managers of the company.

198.    Defendant Valdez intentionally, willfully and recklessly engaged in an extreme, gross and outrageous pattern of conduct designed not only to harass Plaintiff but to humiliate her and cause her severe emotional distress, for his own sexual or otherwise perverse gratification.

199.    This pattern of behavior substantially interfered with Plaintiff's employment.

200.    Defendant Tabler knew of the extreme, gross and outrageous conduct of Valdez, as described in more detail above. However, Tabler failed to take any remedial action against Valdez, nor any action to protect Plaintiff, thereby condoning Valdez's conduct.

201.    Defendants Tabler and Valdez were engaged in the conduct as alleged above while they were acting as agents of Defendant St. Moritz, and were acting in the scope of, and during the course of their employment with St. Moritz.

202.    Defendant St. Moritz was fully informed and had sufficient knowledge of all material facts and circumstances relevant to the conduct of its employees and failed to act in any respect to prevent any further instances of the conduct described in more detail above. As St. Moritz acquiesced in, approved and ratified the actions of Valdez and Tabler, it is therefore liable for the actions of Valdez and Tabler.

This is a copy of a pleading filed electronically pursuant to New York State court rules (22 NYCRR §202.5-b(d)(3)(i)) which, at the time of its printout from the court system's electronic website, had not yet been reviewed and approved by the County Clerk. Because court rules (22 NYCRR §202.5[d]) authorize the County Clerk to reject filings for various reasons, readers should be aware that documents bearing this legend may not have been accepted for filing by the County Clerk.

203.    The acts and omissions of the defendants were intentional, negligent, malicious and in reckless disregard of Plaintiff's sensibilities, and were an abuse of their authority over Plaintiff.

204.    That the actions of the Defendants, as alleged above, were extreme, gross, intentional, and demonstrated a willful, wanton and/or reckless indifference to the rights of the Plaintiff such that punitive damages should be assessed against the Defendants.

205.    Plaintiff is therefore entitled to monetary damages, including compensatory damages, punitive damages, statutory damages and special damages, as well as his costs, fees (including attorneys' fees) and disbursements, in amount to be determined at trial.

### AS AND FOR A TENTH CAUSE OF ACTION
#### (Negligent Infliction of Emotional Distress)

206.    Plaintiff repeats and realleges each and every allegation stated above as if fully set forth herein.

207.    Plaintiff, in her employment with Defendant St. Moritz, was subject to the authority of Defendant Valdez, as one of the regional managers of the company.

208.    Valdez negligently, recklessly, willfully and wantonly, for his own sexual and otherwise perverse gratification, as described in more detail above, engaged in an extreme, gross and outrageous pattern of conduct designed not only to harass Plaintiff but to humiliate her and cause her severe emotional distress.

209.    This pattern of behavior substantially interfered with Plaintiff's employment.

210.    Defendant Tabler knew of the extreme, gross and outrageous conduct of Valdez, as described in more detail above. However, Tabler failed to take any remedial action against Valdez, nor any action to protect Plaintiff, thereby condoning Valdez's conduct.

35

This is a copy of a pleading filed electronically pursuant to New York State court rules (22 NYCRR §202.5-b(d)(3)(i)) which, at the time of its printout from the court system's electronic website, had not yet been reviewed and approved by the County Clerk. Because court rules (22 NYCRR §202.5[d]) authorize the County Clerk to reject filings for various reasons, readers should be aware that documents bearing this legend may not have been accepted for filing by the County Clerk.

211.    Defendants Tabler and Valdez were engaged in the conduct as alleged above while they were acting as agents of Defendant St. Moritz, and were acting in the scope of, and during the course of their employment with St. Moritz.

212.    Defendant St. Moritz was fully informed and had sufficient knowledge of all material facts and circumstances relevant to the conduct of its employees and failed to act in any respect to prevent any further instances of the conduct described in more detail above. As St. Moritz acquiesced in, approved and ratified the actions of Valdez and Tabler, it is therefore liable for the actions of Valdez and Tabler.

213.    The acts and omissions of the defendants were intentional, negligent, malicious and in reckless disregard of Plaintiff's sensibilities, and were an abuse of their authority over Plaintiff.

214.    That the actions of the Defendants, as alleged above, were extreme, gross, intentional, and demonstrated a willful, wanton and/or reckless indifference to the rights of the Plaintiff such that punitive damages should be assessed against the Defendants.

215.    Plaintiff is therefore entitled to monetary damages, including compensatory damages, punitive damages, statutory damages and special damages, as well as his costs, fees (including attorneys' fees) and disbursements, in amount to be determined at trial.

**WHEREFORE**, Plaintiff prays that the Court enter a judgment in their favor and against the Defendants, containing the following relief:

A.    An award of damages in an amount to be determined at trial, plus prejudgment interest, to compensate Plaintiffs for all monetary and/or economic damages and all non-monetary and/or compensatory damages;

B.    An award of punitive damages;

C.    An award of costs the Plaintiff has incurred in this action, as well as Plaintiff's reasonable attorneys' fees to the fullest extent permitted by law; and

D.    Such other relief that the Court deems just and proper.

36

This is a copy of a pleading filed electronically pursuant to New York State court rules (22 NYCRR §202.5-b(d)(3)(i)) which, at the time of its printout from the court system's electronic website, had not yet been reviewed and approved by the County Clerk. Because court rules (22 NYCRR §202.5[d]) authorize the County Clerk to reject filings for various reasons, readers should be aware that documents bearing this legend may not have been accepted for filing by the County Clerk.

## JURY DEMAND

Plaintiff hereby demands a trial by jury on all issues of fact and damages stated herein.

THE LAW OFFICE OF
THOMAS S. MIRIGLIANO, ESQ., P.C.

By: _____

Dated: New York, New York
       February 5, 2021

    Thomas S. Mirigliano
    115 Broadway, Fifth Floor
    New York, New York 10006
    Tel: (917) 426-2688
    Fax: (646) 219-5027
    Email: tsm@miriglianolaw.com
    *Attorneys for Plaintiff*

37

This is a copy of a pleading filed electronically pursuant to New York State court rules (22 NYCRR §202.5-b(d)(3)(i))
which, at the time of its printout from the court system's electronic website, had not yet been reviewed and
approved by the County Clerk. Because court rules (22 NYCRR §202.5[d]) authorize the County Clerk to reject
filings for various reasons, readers should be aware that documents bearing this legend may not have been
accepted for filing by the County Clerk.

## ATTORNEY VERIFICATION

STATE OF NEW YORK        )
                             ) ss.:

COUNTY OF NEW YORK      )

THOMAS S. MIRIGLIANO, ESQ. an attorney at law, duly admitted to practice in the Courts of the State of New York, affirms under the penalties of perjury:

1.      I am the principal of the LAW OFFICE OF THOMAS S. MIRIGLIANO, ESQ., P.C., attorneys for the Plaintiff in the above-entitled action.

2.      I have read the foregoing SUMMONS AND VERIFIED COMPLAINT of Plaintiff and know the contents thereof, and the same is true to my own knowledge, except as to matters therein stated to be alleged upon information and belief, and as to those matters, I believe them to be true. The sources of my information and the grounds of my belief as to all matters not stated upon my knowledge are communications, papers, reports, and investigations contained in the file maintained by my office.

3.      This Verification is made by me rather than by Plaintiff because Plaintiff resides outside of the County where I maintain my office.

DATED:      New York, New York
               February 5, 2021

                                        _____
                                        Thomas S. Mirigliano, Esq.

This is a copy of a pleading filed electronically pursuant to New York State court rules (22 NYCRR §202.5-b(d)(3)(i)) which, at the time of its printout from the court system's electronic website, had not yet been reviewed and approved by the County Clerk. Because court rules (22 NYCRR §202.5[d]) authorize the County Clerk to reject filings for various reasons, readers should be aware that documents bearing this legend may not have been accepted for filing by the County Clerk.